HARLOW SANDERS *v.* THE TOWN OF BOLTON.

*Soldier's Bounty.*

Previous to the plaintiff's re-enlistment in the field to the defendant's credit, he learned from a letter written by one of the defendant's selectmen who had authority to procure enlistments, but it did not appear that it was written in his official capacity, to one of the members of the plaintiff's company, that the town was paying a bounty of $300 to each man who would enlist to the credit of the town on its quota under the call of October 17, 1863, for 300,000 men; and the plaintiff re-enlisted and was mustered to the credit of the town, relying upon the information contained in said letter, expecting the bounty. Immediately upon his re-enlistment, he and others of his company who had re-enlisted, caused a letter to be written to the selectmen, giving them notice of their re-enlistment, and that they understood they should apply on said quota, and that they should claim the bounty. *Held*, that said letters did not constitute a contract between the plaintiff and the town.

ASSUMPSIT for a town bounty. Plea, the general issue, and trial by jury and verdict for the plaintiff, April term, 1873, PIER-POINT, Ch. J., presiding.

On December 7, 1863, the defendant

"*Resolved*, That the selectmen be and they are hereby authorized to pay a bounty not exceeding $300, to each volunteer who shall be mustered into the United States service before January 5, 1864, and applied to the quota of this town to be raised under the last call of the President of the United States for volunteers."

The defendant's quota under the call of the President of October 17, 1863, for 300,000 volunteers, was eight men. Immediately after said vote, the selectmen agreed together that they would pay $300 to each volunteer under said vote. Church, one of the selectmen, had had the principal charge of procuring enlistments to fill previous quotas, and enlisted six men (all who were enlisted) on the quota named in said vote; but four of said men were not mustered till January 7, 1864, although they were in camp at Brattleboro, awaiting muster, previous to January 5th. The plaintiff's evidence tended to show, that he re-enlisted while in the field, for the term of three years, and was mustered into the United States service to the credit of the town of Bolton, at Brandy Station, on the 16th of December, 1863 ; that previous to such re-enlistment, he learned from a letter written by said Church to one of the members of his company, that the town of Bolton was paying a bounty of $300 to each man who would enlist to the credit of the town on its quota under the call of October 17, 1863, and that he re-enlisted and caused himself to be mustered to the credit of said town, relying upon the information contained in said letter, and expecting such bounty from the town ; that on the day of his re enlistment, he, with others of his company who had re-enlisted, caused a letter to be sent to the selectmen of the town, written and signed by one Bronson, giving them notice of the fact of their re-enlistment to the credit of the town ; also of the fact of their understanding that they would apply upon said quota, and that they claimed the town bounty offered by the town. This letter was posted at Brandy Station on the 20th December, and was received by Church on the 25th. Other questions were raised in the case, but were not considered by the court. All other facts material to the question decided, appear in the opinion. The court charged the jury that

said vote was not an open, general offer to all who should be mustered and applied on said quota; but that, to bind the town, it was necessary that the selectmen should have made what the law would recognize as a contract with the plaintiff to pay him the bounty; that if the jury found such a letter was written by Church as the plaintiff's testimony tended to show, and that he enlisted and caused himself to be mustered into the service, relying upon the information contained in said letter, and expecting to receive the bounty therein mentioned, it would constitute such a contract between the plaintiff and the selectmen as would, in law, be binding upon the town, and lay the foundation for a recovery in this action, unless his right to recover was cut off by what subsequently transpired. To the last proposition of the charge the defendant excepted.

*E. R. Hard,* for the defendant.

*Henry Ballard* and *H. H. Talcott,* for the plaintiff.

The opinion of the court was delivered by

BARRETT, J. It is correctly stated in the charge to the jury, that, to bind the town, it was necessary that the selectmen should have taken action under the vote, resulting in what the law would recognize as a contract between them and the plaintiff to pay him a bounty. This implies that the selectmen, whether acting in concert, or by Church alone, should have been the one party taking action with reference to the plaintiff as the other party. In effect, there must have been a proposition by them to the plaintiff, and accepted by him, or a proposition by him, and accepted by them, under said vote, constituting a contract, effectuated by a meeting of the minds of the parties. This is not the case of an assumpsit to be implied, to pay *quantum meruit,* or *quantum valebant,* for beneficial services rendered for the defendant without request, but with its acquiesence, and in such a way as to show that it was, or ought to have been, mutually expected by the parties that reasonable compensation would be made therefor. If the town is to be held liable, it is because, by its selectmen, it ex-

pressly contracted with the plaintiff under the authority and in pursuance of the vote of December 7, 1863.

The vote itself was not an open, general offer that any one might regard as personal to himself, and by complying with its terms, would obligate the town as by an express contract. The plaintiff does not show or claim that the selectmen, or any one of them, made any application or proposition to him to enlist and be mustered in under said vote. He only shows and claims that previous to his re-enlistment on December 16th, he learned by a letter written by Truman T. Church to one of the members of his company, that the town was paying a bounty of $300 to each man who would enlist to the credit of the town on its quota under the call of October 17th. It is not shown nor intimated that the letter was written by Church in his official character and capacity as selectman, or in behalf of the town in any respect. For aught that appears, it was a friendly, unofficial letter to a soldier friend, informing him in general terms what the town was doing in the matter of getting recruits under the recent call—not designed or purporting to be an offer to anybody, even to him to whom it was addressed, for an enlistment under that vote. Indeed, the letter, as it is set forth, did not state in full the essential terms of the vote —not containing any thing as to being mustered into the United States service before January 5th, 1864.

As it is not shown that the selectmen, or any one of them, had made any proposition or offer to any of the men in the field, under said vote, of course, the letter sent to the selectmen signed L. Bronson, could have no effect in the direction of consummating a contract between them and the parties named in said letter. It had no official authenticity as a verification of the fact stated. Only the enlistment and muster-in papers, or the records of the Adjutant General's office, could reliably verify the fact of the enlistment, the muster in, and the credit. At the time that letter was written, and until the order of January 8, 1864, those re-enlisted men could not apply on the quota of the town under the call in question. Of course, if the contract was consummated so as to bind the town, it became so when said letter of Bronson was received by the selectmen; and thereafter the town would have

been bound to pay them the bounty, notwithstanding the selectmen should personally have contracted with home recruits to the full number of the quota, and have bound the town to pay them. It seems very plain that such a view cannot be maintained. It does not answer the point to say that the plaintiff applied on that quota to the credit of the town, unless he so applied in virtue of a contract with the selectmen. They had no knowledge of what he was doing in the matter of re-enlistment at Brandy Station on the 16th of December, and would have had no control over what he was doing if they had known of it. The information conveyed by the letter of Bronson, as before remarked, had no official authenticity and effect.

They were under no duty, and had no official function, to undertake to undo what the plaintiff, without their knowledge or request, had done in the matter of re-enlistment to the credit of the town. They left that matter with the plaintiff, without interposition or interference on their part. It is of no account, as affecting the obligation of the town to the plaintiff on the score of a contract made by the selectmen, that the selectmen actually contracted with only six men to apply on the quota of eight, and so, the town being short by two men, the plaintiff supplied the place of one of them. Whether the selectmen would contract with more than six men, was a matter between them and the town. Whether the town should fill its quota, was a matter between the town and the government, involving liability to a draft in case it should not fill it. The filling of the *quota* was put into the hands of the selectmen, to be done by contracts which they should see fit to make with persons for that purpose. It was not the province of the plaintiff, at the charge of the town, to help supply any part of the number required, unless in virtue of a contract made by him with the selectmen to that intent and effect. From what is thus said, it is apparent that we regard to be erroneous the part of the charge as to the letter of Church, and what would constitute a contract binding on the town under the vote in question. As to the residue of case, no opinion is expressed.

Judgment reversed ; remanded.